JAMES A. REED AND MARY C. REED, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reed v. Commissioner
Docket No. 1613-75
United States Tax Court
T.C. Memo 1978-58; 1978 Tax Ct. Memo LEXIS 458; 37 T.C.M. (CCH) 301; T.C.M. (RIA) 780058; February 14, 1978, Filed James A. Reed, pro se. John O. Tannenbaum, for respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Randolph F. Caldwell, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 5 of this Court, 67 T.C. XXI. [1] The Court agrees with and adopts the opinion of Special Trial Judge Caldwell which is set forth below. *459 OPINION OF SPECIAL TRIAL JUDGE CALDWELL, Special Trial Judge: Respondent determined a deficiency of $1,983.15 in petitioners' Federal income taxes for 1969. The issue for decision is the extent of the interest of James Reed ("petitioner") in the partnership of Anderson, McCrane and Reed. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by this reference. Petitioners resided in Fitzwilliam, New Hampshire, at the time the petition herein was filed. They were husband and wife at that time; subsequently they were divorced and the divorce decree has become final. On or about January 1, 1969, petitioner entered into a partnership with Robert Anderson, John McCrane, and Anderson's two sons, James and Gerald, under the firm name of Anderson, McCrane and Reed ("partnership"). An agreement of limited partnership had been drawn up on or about December 9, 1968, which provided that the above-named individuals were to be the general partners. There were no limited partners named. Robert Anderson was to have a 50 per cent interest in the partnership, McCrane and petitioner *460 20 per cent each, and each of the Anderson sons 5 per cent. The partners would share profits or losses in the proportions of their interest in the partnership. Capital contributions were to be made by each partner in such amounts as were determined by the managing partner who was to be Robert Anderson. The purpose of the partnership was to engage in the negotiation of financial, business and other commercial transactions throughout the world, with its principal place of business to be at One Rockefeller Plaza in New York City. The foregoing agreement was never signed by any of the partners. The contributions to capital amounts and distributions of partnership profits were never made in accordance with the proposed partnership agreement. Petitioner and the other above-mentioned partners also conducted similar business in corporate form through two corporations, Robert Anderson & Co., Ltd., and Ancor Corporation, in each of which petitioner had a 15 per cent interest. The income of the partnership was erratic; there were no fixed sources of income, such as retainers. As a result, it was the understanding among all the partners that each would have a drawing account; and if at *461 the end of a year a partner had drawn more than his distributive share, he would be obligated to repay such excess.
In Schedule K of the partnership return filed for the calendar year 1969, item 4 thereof shows the following allocations of partnership income for that year: Percentage of Partner
Income
Total Income
McCrane
$12,908.48
22.15
Reed
24,927.50
42.76
G. Anderson
10,964.64
18.78
J. Anderson
9,506.53
16.31
$58,307.15
100.00
None of the partnership income was allocated to Robert Anderson. A great deal of the business of the partnership and the two above-mentioned related corporations was transacted overseas, and consequently a sizeable amount of the organizations' income was earned abroad. Petitioner believed that a considerable amount of such foreign-source income was being kept abroad instead of being repatriated to the United States. This was a point of dissatisfaction to petitioner, and he sought an accounting from his fellow partners and shareholders. Being unsuccessful in that endeavor, the partnership was dissolved and petitioner has brought suits for an accounting in the state and federal courts, which litigation is *462 still pending. Petitioner included the $24,927.54, shown opposite his name in the tabulation set out above, in gross income on his 1969 return. That amount represents his drawings during 1969. Petitioner has not repaid or offered to repay the portion thereof which exceeds 20 per cent of the partnership's income for that year, which percentage he contends represents his interest in the partnership. Petitioner bases his failure to make or offer repayment of such excess on his position, presently being pressed in the litigation against his former partners, that he is entitled to additional partnership income in an amount greater than his excess drawings. When respondent examined the partnership's 1969 return, he disallowed various expense deductions claimed thereon in the aggregate amount of $16,674.94, thereby increasing partnership income by the same amount. In his notice of deficiency to petitioners, he determined that 42 per cent of such increase, or $7,003.47, was taxable to petitioners with the following explanation: The change in your distributive share of partnership income for your tax year ended December 31, 1969 is $7,003.47, which is 42% of the above adjustment. *463 Respondent used the factor of 42 per cent, as that was the approximate percentage of partnership income which had been received by petitioner through his drawings, as shown on the tabulation set out above. OPINION One procedural matter requires attention before proceeding to the merits of this case. When the case was called for trial, petitioner Mary C. Reed did not appear nor was there any appearance on her behalf. Petitioner James Reed did appear, but he advised the Court that he and Mary Reed had been divorced, since the filing of the petition, that the divorce had become final, and that he did not know her whereabouts. Counsel for respondent thereupon filed a motion to dismiss as to Mary C. Reed for lack of prosecution, which motion was taken under advisement to be acted upon at the time the merits of the case were decided. Inasmuch as petitioner James Reed had no authority to represent his former wife, and there was no other appearance by her on his behalf, the motion to dismiss will be granted and decision will be entered against Mary C. Reed for a deficiency in the same amount as that ultimately determined against petitioner James Reed. Petitioner stated at the *464 trial that, for the purposes of this case, he would not contest the adjustments made to the partnership's income, which generated the deficiency determined against him.His position is, however, that he had only a 20 per cent interest in the partnership, and not a 42 per cent interest. Although the above-described agreement, relating to the partnership here involved, was not signed by petitioner and the other partners, petitioner urges that there was a de facto partnership according to the law prevailing in New York (where its principal place of business was located). Respondent's determination was, and his position in this case continues to be, that there was a partnership. Hence, the Court will treat Anderson, McCrane and Reed as a partnership, with petitioner as a member thereof. Consequently, the Court will look to the pertinent sections of Subchapter K of the 1954 Code (which deals with partnerships) in deciding this case.
Section 702(a)(9), as in effect of the year 1969, provides that in determining his income tax, each partner shall take into account his distributive share of the *465 partnership's taxable income. Section 704, dealing with a partner's distributive share, provides in here pertinent part -- (a) Effect of Partnership Agreement. -- A partner's distributive share of income * * * shall, except as otherwise provided in this section, be determined by the partnership agreement. In the instant case, the written partnership agreement was not signed, and hence, that document, in and of itself, does not furnish a guideline for determining petitioner's distributive share of the partnership's taxable income. We turn then to all the facts and circumstances surrounding the formation and operation of the partnership; and, after due consideration we are persuaded that petitioner's agreement with his partners was for a 20 per cent interest in the partnership's taxable income. The 20 per cent figure for petitioner's interest is close to the 15 per cent interest which petitioner had in the two related corporations, and petitioner's testimony was that in those three related organizations the range of 15 - 20 per cent was the "common denominator" of his interests. Moreover, there was testimony by petitioner that when in 1970 the admissions of a new partner was being *466 contemplated, it was proposed that petitioner's interest be reduced to 15 per cent along with reductions in the interest of other general partners, to provide for a 15 per cent for the new partner, but that petitioner successfully resisted the reduction in his interest. This testimony ties in with a memorandum from the partnership's accountant to Robert Anderson (Joint Exhibit 3-C). We are mindful too of petitioner's emphatic testimony that his interest was 20 per cent, which gains in weight when it is considered in the light of his litigation to recover profits from his former partners. It would be to petitioner's advantage in that litigation to establish as high a partnership interest as possible, and his testimony in the present case to a 20 per cent interest could be used against him. Finally, if the partnership interests are to be determined on the basis of the allocation of partnership income, as respondent has done, the anomalous result would be that Robert Anderson, who took none of the income in 1969, would have no partnership interest. Yet every indication is that he was the dominant figure in the partnership. It is accordingly found as a fact and held that petitioner *467 had a 20 per cent interest in the partnership, and he must include in his income for 1969 20 per cent, but not 42 per cent, of the additional partnership income resulting from the disallowed deductions. Petitioner did include in his income for 1969 the full amount of $24,927.50 shown as distributed to him on Schedule K of the partnership return. The petition -- and it is to be noted that petitioner is an attorney -- contained no assignment of error that respondent failed to reduce the reported amount to 20 per cent of the partnership income. Petitioner urges on brief, however, that to the extent his drawings of $24,927.50 exceed 20 per cent of the partnership's income, such excess is not income to him, since he is under an obligation to repay such excess to his former partners, and that if in his litigation with them it is determined that he does owe them the excess he will repay it. Even though the issue is not pleaded, it is deemed advisable to point out to petitioner that he had free and unfettered command over the full $24,927.50 and there is no fixed and determinable obligation at this point for him to repay any of it. Cf. Rev. Rul. 73-301, 1973-2 C.B. 215. If *468 petitioner is ultimately compelled to make repayment, it would appear that he would be entitled to a deduction at that time. * * *
In accordance with the foregoing, Decision will be entered under Rule 155 with respect to James A. Reed. An appropriate order and decision will be entered with respect to Mary C. Reed. Footnotes
1. Pursuant to General Order No. 5 dated October 1, 1976, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.